# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES L. CETRAN, CHIEF OF THE WETHERSFIELD POLICE DEPARTMENT, | : <br> : <br> : |
| Plaintiff, | : CASE NO.: <br> : |
| v. | : <br> : |
| TOWN OF WETHERSFIELD and GARY EVANS, TOWN MANAGER OF WETHERSFIELD | : <br> : <br> : <br> : |
| Defendants. | : JUNE 15, 2021 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Chief James L. Cetran of Wethersfield Police Department ("Plaintiff" or "Chief Cetran"), by and through his undersigned counsel, hereby complains that his due process rights protected under the Fourteenth Amendment of the United States Constitution are being violated by Defendants, the Town of Wethersfield ("Wethersfield" or "Town") and Gary Evans, Town Manager ("Evans" or "Town Manager") (collectively, "Defendants"). Chief Cetran seeks declaratory and injunctive relief, preventing Defendants from removing him as Chief of Police without the required procedural safeguards guaranteed by the Constitution.

In support of this demand for relief, Plaintiff states as follows:

## INTRODUCTION

1. The Town served Plaintiff with a Notice of Intent to Dismiss ("Notice") at 4:49 pm on June 9, 2021, pursuant to Connecticut General Statutes, § 7-278 which sets a hearing date of June 15, 2021, before the Town Council. A true and correct copy of the Notice of Intent to Dismiss is attached hereto as Exhibit B.

2. In a letter dated June 14, 2021, Town Attorney, Kenneth R. Slater, Jr. ("Slater"), identified the narrow scope of evidence that Chief Cetran will be allowed to present during this hearing. A true and correct copy of Slater's Letter to Chief Cetrain's Counsel ("Slater Letter") is attached hereto as Exhibit C.

3. Slater explains that Chief Cetran is not permitted to explore critical factual issues paramount to his defense of the allegations leveled against him. In narrowing the scope of the Cetran's hearing, Evans and the Town also refused to provide an explanation of important factual questions pertinent to Cetran's ability to craft an adequate defense.

4. Under Connecticut statutory law, Defendants may only terminate Chief Cetran for "just cause." *See* Conn. Gen. Stat. § 7-278. As such, Chief Cetran has a well-established and protected property interest in his employment as Wethersfield's Chief of Police.

5. Accordingly, Chief Cetran files this action in response to Defendants' intent to conduct the scheduled public hearing in direct violation of Chief Cetran's due process rights, despite . *See e.g. Santana v. City of Hartford*, 94 Conn. App. 445, 468–69, 894 A.2d 307, 324 (2006), *aff'd*, 282 Conn. 19, 918 A.2d 267 (2007) (recognizing public employee in Connecticut "had a property right in continuing employment which was constitutionally entitled to be protected against procedural due process violations because [his employment] could be terminated only for certain sorts of cause[]").

6. "[T]he only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect[, because] permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action." *Clayton v. City of Middletown,* 564 F. Supp. 2d 105, 115–16 (D. Conn. 2008) (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, n. 8 (1985)).

7. The actions of Wethersfield and Evans strip Chief Cetran of this foundational right of procedural due process. Unless the hearing is enjoined, Chief Cetran will be denied due process *before* the Town Council must decide upon his termination.

8. If the hearing is held as scheduled, Chief Cetran shall be denied "an explanation of all [Defendants'] evidence against him" and the "opportunity to present his side of the story[.]" *Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 124 (D. Conn. 2012).

## JURISDICTION AND VENUE

9. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

10. Plaintiffs seek relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

11. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

12. Plaintiff Chief James L. Cetran is a natural person and a citizen of Connecticut and the United States and, at least until the June 15th hearing, the active head of the Wethersfield Police Department.

13. Defendant the Town of Wethersfield ("Town" or "Wethersfield") is municipality formed under the laws of the State of Connecticut.

14. Defendant Gary Evans, named in his official capacity, is the current Town Manager of Wethersfield – a position he has held since March 1, 2019 – and is responsible for "supervis[ing] and control[ing] all departments and agencies of the town," with certain minor exceptions. *See*

Wethersfield Charter, § 404 (Powers of Town Manager). At all times, the Town Manager acts under the color of state law.

## FACTS

15. Chief Cetran is the active head of the Wethersfield Police Department, at least until the scheduled June 15th hearing is conducted.

16. Chief Cetran "has provided some forty-seven (47) years of honorable, distinguished and dedicated service to the Wethersfield Police Department." *See* Ex. A, Retirement Agreement.

17. Gary Evans, the Town Manager since March 1, 2019, "shall appoint and may remove, subject to the provisions of Chapter VIII of this Charter, all officers and employees of the departments and agencies of the town and shall have the power to transfer and reassign offices, functions and responsibilities among the various departments, officers and agencies under the Manager's jurisdiction …" *See* Wethersfield Charter, § 404 (Powers of Town Manager).

18. The Wethersfield Town Charter ("Charter") vests power in the Town Manager to remove the head of the police department except as otherwise provided in the Charter and subject to the approval of the Town's governing body ("Council").

19. Connecticut General Statutes § 7-278 mandates that the active head of a municipal police department may only be terminated or dismissed for "just cause[,]" thereby vesting the Chief of the Wethersfield Police Department with a property interest in his employment.

*Paid Administrative Leave and Retirement Agreement*

20. The Town Manager placed Chief Cetran on paid administrative leave on November 23, 2020.

21. The reasons for Chief Cetran's paid administrative leave largely resulted from the Town Manager's insistence on being personally involved with all disciplinary decisions for police

personnel, a responsibility that the Charter of Wethersfield generally assigned to the Chief of Police. *See* Wethersfield Charter, Ch. IV, § 602 (specifying "shall be responsible for the care and custody of all property used by the Division and for the efficiency, discipline and good conduct of its members and shall make rules for the operation of the Division and the conduct of police work, subject to the approval of the Director of Public Safety").

22. The Town Manager also challenged policy decisions made by Chief Cetran, and cited examples in a thinly veiled effort to justify the unwarranted paid administrative leave that the Town Manager imposed upon Chief Cetran.

23. The Town Manager's animus toward Chief Cetran was apparent in various verbal and written communications including a November 23, 2020, letter to Chief Cetran that unlawfully and in violation of Chief Cetran's right to associate under the First Amendment to the United States Constitution informed Chief Cetran that he "will not be allowed on any Town property" during the paid administrative leave (including, on the face of the directive, Town roads and sidewalks).

24. While he was on paid administrative leave, Chief Cetran signed a Retirement Agreement ("Retirement Agreement") on January 13, 2021, which was signed by the Town Manager on behalf of Wethersfield. A true and correct copy of the Retirement Agreement is attached hereto as Exhibit A.

25. The Retirement Agreement contains the following material provision:

> Accordingly, Chief Cetran shall continue to address disciplinary, union, personnel, and other operational issues, in accordance with labor rules and laws and past practices. Any promotions made by Chief Cetran, shall be in accordance with past practices and laws which shall be in accordance with testing and probationary requirements. Chief Cetran shall keep the Director of Public Safety timely apprised of said actions.

Ex. A, Retirement Agreement at ¶ 2.

5

26. The Town agreed that Chief Cetran would return to work on January 18, 2021, to perform the duties of the Chief of Police. *Id*.

27. In accordance with the Retirement Agreement, Chief Cetran submitted a notice on February 6, 2021, to the Town Manager of his intent to retire effective August 31, 2021.

28. In violation of the Retirement Agreement, the Town Manager interfered with Chief Cetran's ability to perform his duties, including interfering with the promotion process for the open police lieutenant position and preventing the process from proceeding in a timely manner without undue delay or external interference. *See* Ex. A, Retirement Agreement at ¶ 2.

29. The Town breached the Agreement by preventing Chief Cetran from performing his duties, including filling the open lieutenant position, as the Town represented it would do in Section 2 of the Agreement. *Id*.

30. While Chief Cetran was on paid administrative leave, the police department fell into a dysfunctional state. This included an open internal affairs investigation of inappropriate sexual conduct at the firing range on October 22, 2020, which the Acting Chief of Police and Town Manager had delayed for three months while Chief Cetran was away.

31. On May 14, 2021, Chief Cetran rescinded/withdrew his notice of intent to retire because the Town breached its agreement not to interfere with his authority to make promotions as long as those promotions accord "with past practices and laws which shall be in accordance with testing and probationary requirements." *See* Ex. A, Retirement Agreement at ¶ 2.

32. In response to the rescission of Chief Cetran's intent to retire, the Town Manager informed Chief Cetran that his "retirement and final day of service to the town is part of a binding contract that is not subject to rescission, withdrawal or modification by either you or the town without mutual agreement."

*Town's Notice of Intent to Dismiss, dated June 9, 2021*

33. On June 9, 2021 at 4:49 pm, the Town notified Chief Cetran of its intent to dismiss him from his post as Chief of Police for Wethersfield Police Department. *See* Ex. B, Notice of Intent to Dismiss.

34. The Town indicated that Chief Cetran violated his Retirement Agreement and thus refused to retire as of August 31, 2021 – citing this as the basis for the intent to terminate Chief Cetran's employment.

35. The Town asserts "just cause" in its Notice of Intent to Dismiss as follows:

> By sending his May 14th email, in violation of the binding agreement between he and the Town, Chief Cetran has engaged in conduct constituting 'just cause' for his dismissal. Specifically, Chief Cetran's conduct as outlined above constitutes an unlawful breach of the terms of the January 13, 2021 retirement Agreement mutually negotiated an executed by Chief Cetran, who was represented by legal counsel throughout these negotiations, and the Town of Wethersfield.

Ex. B, Notice of Intent to Dismiss at 4

36. The Town's notice omitted any mention of the numerous allegations that the Town Manger lodged against Chief Cetran, which were the basis for his paid administrative leave in November of 2020.

37. The alleged breach of the Retirement Agreement is a mere pretext for Chief Cetran's termination; the Town Manager articulated his actual reasons for intending to terminate Chief Cetran in a memo created on or about November 2020.

38. In a letter dated June 14, 2021, Counsel for Chief Cetrain requested from the Town and the Town Manager further explanation of the evidence underlying these allegations. A true and correct copy of the June 14, 2021 sent by Chief Cetran's Counsel is attached hereto as Exhibit D.

39. The Town and the Town Manager responded solely with the Slater Letter, which explained that these allegations and related evidentiary questions were not deemed relevant to Chief Cetran's hearing scheduled for the evening of June 15, 2021. *See* Ex. C, Slater Letter at 1-2.

40. Through the Slater Letter, the Town and the Township manager refused to produce records critical to Chief Cetran's defense, and further refused to offer a full explanation of the actual reasons for Chief Cetran's termination – the pretextural rationale offered in the Notice of June 9, 2021.

41. The Town and the Township Manager have narrowed the scope of the scheduled hearing – including the evidence that Chief Cetrain may present at this hearing – to deprive Chief Cetran of his due process rights under the Fourteenth Amendment.

42. Pursuant to the guidelines outlined in the Slater Letter, the hearing curtails Chief Cetran in presenting his account to the final decisionmakers. No single component is more fundamental of due process.

43. Defendants intend to divest Chief Cetran of his protected property interest in his employment as Chief of the Wethersfield Police Department without due process of law.

44. Defendants act under the color of state law when they will shall conduct the June 15th hearing and thereafter terminate Chief Cetran as the head of the Wethersfield Police Department.

## CAUSE OF ACTION

### THE JUNE 15TH PUBLIC HEARING DEPRIVES PLAINTIFF OF A PROTECTED PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT

45. Plaintiff hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

46. Defendants have denied Chief Cetrain the due process of law, protected under the Fourteenth Amendment, by forcing him to participate in a sham public hearing (1) where the Town and Town Manager have refused to explain the actual basis for his termination, together with the evidence related to those allegations; and (2) with a scope so narrow to prevent him from offering a defense to the decisionmakers.

47. "While pre-termination process 'need not be elaborate or approach ... a full adversary hearing, ... due process does require that before being terminated such an employee be given oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story.'" *Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 123 (D. Conn. 2012) (quoting *Otero v. Bridgeport Housing Auth.,* 297 F.3d 142, 151 (2d Cir. 2002)).

48. While Defendants will allow Chief Cetran and his counsel to speak, the June 15th hearing will **not afford** Chief Cetran the opportunity to present his side of the story. *See Otero,* 297 F.3d at 151-152 (holding "merely presenting 'some semblance' of the evidence ... does not necessarily afford the accused an adequate opportunity to present her side of the story," and that "mere notice of the charge, ... is not an explanation of the evidence and does not necessarily suffice to provide due process").

49. Defendants have failed to provide a thorough explanation of the evidence against Chief Cetrain, refusing a request by Chief Cetran's attorney to permit an opportunity to review specific records and documents critical to his defense.

50. Slater's Letter limits the termination hearing to the two questions: (1) whether Chief Cetran breached his Retirement Agreement ("Retirement Agreement") with the Town by rescinding his retirement date of August 31, 2021; and (2) whether such a breach qualifies as "just cause" to

remove the Chief from his position. *See* Ex. C, Slater Letter at 2 (denying Chief Cetran access to records critical to his defense "[b]ecause the scope of the hearing is limited to [sic] the Chief Cetran's notice that he as not retiring on August 31, 2021, is just cause to dismiss him in light of [sic] agreement he entered with the Town").

51. Defendants cited the hearing's limited scope as the basis for their refusal to turnover documents critical to Chief Cetran's defense. *Id*.

52. These records request by Chief Cetran's attorney are probative of (1) the enforceability of the Retirement Agreement, and (2) the underlying reasons why the Town Manager is actually seeking termination.

53. These documents pertain to the underlying facts that forced Chief Cetran to accept retirement, and thus are probative of the enforceability of the Retirement Agreement. "Before he could lawfully be deprived of his employment, the Plaintiff must have had an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Clayton*, 564 F. Supp. 2d at 1116 (D. Conn. 2008) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) (quotation marks omitted)).

54. A claim involving procedural due process is evaluated by weighing "the private interest affected by the governmental action and the value of additional procedural safeguards" against "the fiscal and administrative burdens that additional procedures would impose on the government." *See Mathews,* 424 U.S. at 332.

55. Without the ability to review these records and *all* the evidence against him, the June 15th hearing does **not** provide Chief Cetran with a full opportunity to be heard and to present his entire account.

56. Where a public employee is subject to dismissal "for just cause," the Supreme Court has explained, "the only meaningful opportunity to invoke the discretion of the decisionmaker is

likely to be before the termination takes effect, because permitting the employee to give his version of the events will provide a meaningful hedge against erroneous action." *Clayton,* 564 F.Supp.2d at 116 (citing *Loudermill,* 470 U.S. at 543 n. 8).

57. The Town and Township Manager, as described in the Slater Letter, impose critical evidentiary restrictions and a narrow scope during Chief Cetran's hearing.

58. With these limitations, Chief Cetran will not be able "to give his version of the events" and therefore the hearing "will [**not**] provide a meaningful hedge against erroneous action." *See Clayton,* 564 F.Supp.2d at 116 (citing *Loudermill,* 470 U.S. at 543 n. 8).

59. Under the scope of the hearing described in the Slater Letter, Chief Cetran and his counsel are not permitted to explore critical aspects of his defense – *even if Chief Cetran had been given full access to and an explanation of all the evidence against him*.

60. The Town and the Town Manager have precluded Chief Cetran from exploring even "some semblance" of the evidence. *See Otero,* 297 F.3d at 151-152. The guidelines in the Slater Letter indicate that Chief Cetran will be unable to explore whether the cited charges are a mere pretext, and thus whether the Retirement Agreement should be – or can be – enforced.

61. Holding the June 15th hearing and, in doing so, seeking Chief Cetran's termination without the due process of law, constitutes the official policy, custom and practice of Defendants acting under color of law.

62. Holding the June 15th hearing and seeking the termination of Chief Cetran's employment, Defendants have acted under color of state law and have unlawfully deprived Plaintiff of his protected property interest in his employment without due process.

63. The June 15th hearing has already threatened – and continues to threaten – to remove Chief Cetran from his employment without affording him the procedural safeguards constitutionally guaranteed.

64. Defendants' conduct has interfered – and will continue to interfere – with Chief Cetran's retirement and pension benefits if and when his employment is terminated.

65. After this occurs, money damages will not fully compensate Chief Cetran.

## REQUEST FOR RELIEF

Plaintiff seeks the following relief:

(1) A declaration that the June 15th public hearing and the subsequent termination of Chief Cetran's employment violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(2) A preliminary injunction preventing Defendants from holding the June 15th public hearing, or any other such public hearing, without first providing Chief Cetran with (i) full access to and an explanation of *all* the evidence against him, and (ii) a full opportunity to present his version of events, free from any limitations on scope or undue evidentiary restrictions;

(3) A preliminary injunction preventing Defendants from dismissing Chief Cetran as the Chief of Wethersfield Police Department unless and until Chief Cetran receives a hearing with all required due process protections, including but not limited to (i) receiving full access to and an explanation of *all* the evidence against him, and (ii) being afforded a full opportunity to present his version of events, free from any limitations on scope or undue evidentiary restrictions;

(4) An award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

(5) Such other and further relief as this Court deems appropriate to afford Plaintiffs full relief.

Respectfully submitted,

/s/ *Rachel M. Baird*
Rachel M. Baird (ct12131)
Shawn M. Rodgers, Esq. (*Pro Hac Vice* Pending)
GOLDSTEIN LAW PARTNERS, LLC
2234 Silas Deane Hwy, Ste. 2
Rocky Hill, CT 06067
Tel: 860-605-9340
Fax: 860-785-8733
Email: rbaird@goldsteinlp.com
Email: srodgers@goldsteinlp.com

*Attorneys for Plaintiff James L. Cetran, Chief of Police for Wethersfield Police Department*